OPINION
{¶ 1} Defendant-appellant Daniel W. Pierce appeals from his conviction and sentence, following a no-contest plea, on two counts of Rape of a person under the age of *Page 2 
ten, and two counts of Gross Sexual Imposition of a person under the age of ten. Pierce contends that the trial court erred when it denied his motion to suppress statements he made to a plainclothes police officer, in an unmarked police cruiser, in a shopping center parking lot outside his place of employment, before he was arrested and advised of his rights under Miranda v. Arizona (1966), 384 U.S. 436. He concludes that these statements were the product of custodial interrogation, conducted in violation of Miranda, supra.
 {¶ 2} We conclude that Pierce was not in custody at the time of these statements, so that no Miranda warnings were required to be given. Therefore, we conclude that the trial court did not err when it overruled Pierce's motion to dismiss. Accordingly, the judgment of the trial court is Affirmed.
 I {¶ 3} In early March, 2006, Dawn Roden advised Detective Doug Stewart, of the Kettering Police Department, of allegations that her ex-husband, Pierce, had sexually abused Roden's daughter. The child was interviewed by a children's services agency. Detective Stewart watched this interview by video in another room. The child's statements were consistent with those of her mother. Stewart taped a telephone conversation between Roden and Pierce in which they discussed these alleged incidents.
 {¶ 4} Detective Stewart decided to conduct an interview with Pierce. That interview forms the basis for this appeal. At the conclusion of the suppression hearing, the trial court made certain findings of fact, which the trial court subsequently adopted, by reference, in the trial court's decision and entry overruling Pierce's motion to suppress. The findings of fact pertaining to this appeal are excerpted, as follows: *Page 3 
 {¶ 5} "On March the 14th, 2006 at approximately 11:00 A.M., the — Detective Stewart and Detective Voehringer met with the Defendant at Dorothy Lane Market in Washington Township where the Defendant was finishing a 2:00 A.M. to 11:00 A.M. shift.
 {¶ 6} "The Defendant — or excuse me, the Detective wore a suit and was in an unmarked police vehicle. When he saw the Defendant come out of the store, the Detective approached the Defendant and identified himself — both of the detectives did, and Detective Stewart showed Defendant his badge and said to the Defendant words to the effect that we should talk and the Defendant replied words to the effect that yes, we should.
 {¶ 7} "The Detective asked the Defendant if he wanted to talk outside or in the vehicle. The Defendant stated that he wanted to talk in the vehicle. The — the door was opened for the Defendant. He sat in the front passenger's seat. Detective Stewart sat in the driver's seat. Detective Voehringer was not present in the vehicle. The Defendant was advised by Detective Stewart that he was not under arrest and he was free to go and the doors to the vehicle were not locked.
 {¶ 8} "The Detective told the Defendant that [the child] had made certain allegations about inappropriate sexual contact — or conduct. That conversation started at approximately 11:15 A.M. Defendant made certain statements and — and admissions. And at 11:30 the Defendant began writing out a statement containing admissions. That interview ended at approximately 12:00 P.M. or forty-five minutes after it began.
 {¶ 9} "The Defendant appeared to be alert. He was asked if he had drank any alcohol and he — the Defendant stated that he had stopped drinking the night before at approximately 6:00 P.M. because he had to go to work. *Page 4 
 {¶ 10} "There's no evidence of any threats, inducements or promises that were made during that interview and the words in the statement were in the Defendant's own words written by himself.
 {¶ 11} "The Defendant was not Mirandized during that statement. The Detective advised the Defendant at the conclusion of the statement that he was not under arrest, again he was advised of that. And he was given the Detective's card and the Defendant left in his own vehicle."
 {¶ 12} The trial court then discussed events subsequent to this conversation, but later returned to the earlier conversation:
 {¶ 13} "With regard to the interview at Dorothy Lane Market, the Court finds that the Defendant was not in custody. He was specifically advised that he was free to go and that he was not under arrest, therefore, the mandates of a Miranda are not applicable."
 {¶ 14} The trial court then went on to discuss the issue of the voluntariness of this statement, which is not a subject of this appeal, and the telephone conversation between Roden and Pierce that Detective Stewart recorded, with Roden's permission, and later statements that Pierce made to the police, after he was arrested and given hisMiranda warnings, which are also not the subject of this appeal.
 {¶ 15} Detective Stewart was the only witness at the suppression hearing, and it is evident that the trial court found him to be credible. Concerning the conversation in the unmarked police cruiser that is the subject of this appeal, we would only add that Stewart testified that Detective Voehringer, the only other police officer in the vicinity, walked to a position fifty feet away from the unmarked police cruiser. Obviously, then, he would not have been blocking Pierce from leaving the police cruiser, which Pierce was told he was *Page 5 
free to do.
 {¶ 16} A week later, on March 21, 2006, Pierce was arrested. He was advised of his rights under Miranda v. Arizona, supra, waived those rights, and gave a statement.
 {¶ 17} A few days later, Pierce was charged by indictment with two counts of Rape of a child under the age of ten, and two counts of Gross Sexual Imposition of a child under the age of ten. He later moved to suppress the statements he had given to the police. This motion was overruled, in its entirety, following a hearing.
 {¶ 18} Thereafter, Pierce pled no contest, and was found guilty of all four charges. He was sentenced to life imprisonment on each of the two Rape counts, and to five years imprisonment on each of the two Gross Sexual Imposition counts, with all sentences to be served concurrently. From his conviction and sentence, Pierce appeals.
 II {¶ 19} Pierce's sole assignment of error is as follows:
 {¶ 20} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS."
 {¶ 21} In support of his assignment of error, Pierce contends that the trial court erred when it found that he was not in custody when he gave statements, both oral and written, to Detective Stewart on March 14, 2006, while sitting with Stewart in the unmarked police cruiser. Pierce does not challenge the admissibility of his post-arrest statements, which were made after Pierce was advised of his Miranda rights.
 {¶ 22} Both Pierce and the State rely upon State v. Estepp (November 26, 1997), Montgomery App. No. 16279. In that opinion, at p. 5, we laid out a ten-factor analysis for *Page 6 
evaluating whether an interviewee is in custody — i.e., understands that he is not free to decline questioning and leave — for purposes of determining whether warnings must first be given, pursuant toMiranda v. Arizona, supra. That ten-factor analysis is as follows:
 {¶ 23} "1. What was the location where the questioning took place — i.e., was the defendant comfortable and in a place where a person would normally feel free to leave? For example, the defendant might be at home as opposed to being in the more restrictive environment of a police station;
 {¶ 24} "2. Was the defendant a suspect at the time the interview began (bearing in mind that Miranda warnings are not required simply because the investigation has focused);
 {¶ 25} "3. Was the defendant's freedom to leave restricted in any way;
 {¶ 26} "4. Was the defendant handcuffed or told he was under arrest;
 {¶ 27} "5. Were threats made during the interrogation;
 {¶ 28} "6. Was the defendant physically intimidated during the interrogation;
 {¶ 29} "7. Did the police verbally dominate the interrogation;
 {¶ 30} "8. What was the defendant's purpose for being at the place where questioning took place? For example, the defendant might be at a hospital for treatment instead of being brought to the location for questioning;
 {¶ 31} "9. Were neutral parties present at any point during the questioning;
 {¶ 32} "10. Did police take any action to overpower, trick, or coerce the defendant into making a statement." Id.
 {¶ 33} Let us consider these factors one by one. Pierce contends that the first factor — the location of the interview — lies in his favor. We conclude the opposite. Pierce argues *Page 7 
that he was confronted with two bad choices for the location of the interview — either at his place of employment, in the presence of co-workers, or in a police cruiser. The evidence in the record is that Detective Stewart, in plainclothes, stopped Pierce in a shopping center parking lot, outside Pierce's place of employment, said "we should talk," and then gave Pierce the alternative of talking with Pierce, and possibly also Voehringer, who was also in plainclothes, either in the shopping center parking lot, or in Pierce's vehicle. The record does not suggest that one of these "bad" alternatives was having to talk to two recognizable police officers "at" Pierce's place of employment, where it would be obvious to co-workers that he was being questioned, or at least interviewed, by police.
 {¶ 34} The place Pierce chose, Stewart's unmarked police cruiser, was not, in our view, especially intimidating. The unmarked cruiser was in a public parking lot, between 11:00 a.m. and noon, Pierce was allowed to sit in the passenger's seat next to Stewart, the doors were not locked, and Voehringer removed himself to a distance of fifty feet. In our view, when all of the circumstances of this location are considered, including the fact that Pierce was given the option of talking to Stewart outside the unmarked police cruiser, in the shopping center parking lot, a very public location, the first factor lies in favor of the State.
 {¶ 35} The second factor — whether Pierce was a suspect — lies clearly in Pierce's favor, in our view. At this time, Stewart had heard two consistent versions independently from Roden and her child, and had heard discussion of the allegations in the overheard telephone conversation between Roden and Pierce.
 {¶ 36} The third factor — whether Pierce's freedom to leave was restricted — lies in favor of the State, in our view. Pierce argues that despite Stewart's telling Pierce that he was free to leave at any time, Voehringer's presence outside the car blocked him from *Page 8 
leaving. This ignores Stewart's unrebutted testimony that Voehringer removed himself from the car by fifty feet while the conversation was taking place. Voehringer's removal from the immediate vicinity of the car, along with having Pierce sit in front, in the passenger's seat, with the door unlocked, and being told that he was free to leave, are all consistent with Pierce's in fact being free to leave at any time.
 {¶ 37} Pierce does not dispute that the fourth factor — whether he was handcuffed or told he was under arrest — lies in favor of the State.
 {¶ 38} Pierce does not dispute that the fifth factor — whether threats were made-lies in favor of the State.
 {¶ 39} Pierce does not dispute that the sixth factor — whether he was physically intimidated — lies in favor of the State.
 {¶ 40} The seventh factor — whether the police verbally dominated the interrogation — is disputed by the parties. The record is silent on this point, and the trial court made no particular finding on this point, but from our review of the record, we infer that Stewart, who prefaced the session with "we need to talk," verbally dominated the interrogation, although there is no evidence in the record that Pierce ever expressed any reluctance to talk with Stewart or to answer his questions. We conclude that this factor favors Pierce.
 {¶ 41} The eighth factor is Pierce's purpose for being at the location where the interrogation takes place. The example given in State v.Estepp, supra, is whether the defendant is at a hospital for treatment versus being brought to the location for questioning. We understand the purpose of this factor as getting at the reason why the person being interrogated is restricted to the location where the interrogation is taking place. If the restriction is caused by the police, in the furtherance of their desire to question the suspect, *Page 9 
then this factor would weigh against the State. But if the restriction has some independent cause — the suspect being confined in a hospital bed for treatment, for example — then this factor would not weigh against the State. In other words, it seems to be an adjunct factor to factor three — whether the suspect was restricted in any way.
 {¶ 42} In our view, this factor does not come into play in Pierce's case, because he was not restricted. It was made clear to him, at all times, that he was free to go to his car and leave the parking lot. So there is no need to attribute Pierce's restriction to this location either to the police, or to independent causes, because Pierce was not restricted to the location where the interrogation took place. We conclude that the eighth factor is a nullity, not favoring either party, in this case.
 {¶ 43} The ninth factor — whether neutral parties were present at any point during the questioning — clearly lies in favor of Pierce.
 {¶ 44} The tenth factor is whether the police took any action to overpower, trick, or coerce the defendant into making a statement. In his reply brief, Pierce contends that this factor lies in his favor because there is a suggestion in the record that one of the two written statements he was asked to provide was in the form of an apology to the victim. Beyond a bare allusion by Detective Stewart, at one point in his questioning by the trial court, to the fact that the second written statement was an apology to the victim, how the second written statement came to be made was not developed in the record.
 {¶ 45} We conclude that it is a reasonable inference from the facts in the record that Detective Stewart asked Pierce to write an apology to his victim. In our view, this did not constitute "overpowering," "tricking," or "coercing" Pierce into making a statement. It is not uncommon, in questioning a criminal suspect, to appeal to the suspect's empathy for *Page 10 
the victim. We are aware of no cases holding an appeal to a suspect's empathy for the victim, without more, to constitute an act overpowering, tricking, or coercing a suspect into making a statement.
 {¶ 46} The other argument Pierce makes in support of his contention that the tenth factor lies in his favor is that Detective Stewart coerced him into talking by having appeared at Pierce's place of employment, telling Pierce "we should talk," and not telling Pierce that he was free not to talk. Although Stewart did tell Pierce that he was free to leave, which would have the effect, of course, of discontinuing the conversation, Pierce contends that his being told that he was free to leave was negated by Voehringer's having "stood outside the car." Again, Stewart's unrebutted testimony is that Voehringer did not remain standing just outside the car, but removed himself to a location fifty feet away.
 {¶ 47} We conclude that the tenth factor lies in favor of the State.
 {¶ 48} In summation, then, we conclude that the first, third, fourth, fifth, sixth, and tenth factors set forth in State v. Estepp, supra, favor the State; that the second, seventh, and ninth factors favor Pierce; and that the eighth factor is not applicable in this case.
 {¶ 49} As we noted in State v. McCrary, Montgomery App. No. 18885, 2002-Ohio-396, "[W]e do not mean to suggest that the analysis [underEstepp] is a simple counting exercise,. . . .? The issue, as we articulated it in State v. McCrary, supra, is whether, "based upon the totality of circumstances, . . . a reasonable person in [the defendant's] position would . . . have understood himself to have been in custody for more than a short period of time, as in a traffic stop, which does not require Miranda warnings." In that case, we concluded that the defendant was not in custody, even though he was being interrogated at a police station, because he was told that he was free to leave, and the *Page 11 
door to the interrogation room was left open.
 {¶ 50} Under the circumstances of the case before us, we have no difficulty in determining that a reasonable person in Pierce's position would not have understood himself as being in custody — in other words, as not being free to decline the interview initially and leave, or, at any time while the interview was in progress, to terminate the interview and leave. Consequently, we conclude that Detective Stewart was not obligated to give the warnings required by Miranda v. Arizona, supra, and the trial court did not err in overruling Pierce's motion to suppress.
 {¶ 51} Pierce's sole assignment of error is overruled.
 III {¶ 52} Pierce's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
 BROGAN and VALEN, JJ., concur. *Page 1